**MARYLAND DEPARTMENT OF HUMAN RESOURCES, et al.**

v.

**UNITED STATES DEPARTMENT OF AGRICULTURE, et al.**

**Civ. No. HM–85–2734.**

United States District Court, D. Maryland.

Sept. 9, 1991.

See also 617 F.Supp. 408.

Nancy B. Shuger, Asst. Atty. Gen., Stuart R. Cohen, Baltimore, Md., for plaintiffs.

Owen B. Cooper, and Larry Adams, Baltimore, Md., for defendants.

## MEMORANDUM

HERBERT F. MURRAY, Senior District Judge.

Presently pending before the Court are defendants' objections to the Report and Recommendation of Magistrate Judge Daniel E. Klein, Jr., and plaintiffs' response thereto. Based on a *de novo* review of the entire record pursuant to Fed.R.Civ.P. 72(b), the Court accepts the Magistrate Judge's Report and Recommendation and the conclusions and findings therein for the reasons stated below.

Magistrate Judge Klein, heard the parties' cross-motions for summary judgment on November 28, 1990. Magistrate Judge Klein thereafter issued a 45 page Report and Recommendation ("Magistrate Judge's Report") recommending that plaintiffs be granted summary judgment. Defendants filed objections to the Report and Recommendation to which plaintiffs responded. Defendants assert two principle objections to the Report and Recommendation. First, defendants contend that the Magistrate Judge's recommendations should be rejected because they were based on a "flawed application of the standard of review governing challenges ... to agency action under the Administrative Procedure Act ..." Memorandum in support of defendants' objections to the Report and Recommendation of the United States Magistrate Judge ("Defendants' Memorandum") at 2. The Court does not find defendants' argument on this point persuasive, and believes that the Magistrate Judge both articulated and applied the appropriate standard. Magistrate Judge's Report at 22–24.

Defendants mistakenly argue that *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984) requires that this Court defer to the agency's decision to deny Maryland's requests for an exclusion. Defendants' Memorandum at 9–13. *Chevron,* however, dictates no such deference. In *Chevron,* as defendants properly set forth in their memorandum, the Supreme Court held that deference to the agency's reasonable interpretation of its statute was appropriate only where congressional intent could not be gleaned from the text of the statute or from the legislative history. *Chevron,* 467 U.S. at 861–62, 104 S.Ct. at 2790–91. The Court reaffirmed that "[t]he judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent." *Id.* at 843, n. 9, 104 S.Ct. at 2781, n. 9.

■ In this case, the Magistrate Judge correctly framed the issue to be "what Congress meant when it directed the USDA to grant food stamp income exclusions ... to states which funded energy assistance grants to food stamp recipients." Magistrate Judge's Report at 25. Unlike the situation presented in *Chevron,* the Magistrate Judge here was able to determine the intent of Congress by examining the legislative history of the exclusion. The Magistrate Judge concluded that "defendants acted contrary to the intent of Congress when they denied state plaintiffs' FY 1986 and FY 1987 requests for the energy exclusion." Magistrate Judge's Report at 4. Accordingly, the Magistrate Judge properly gave no deference to USDA's contrary interpretation of its own authority. *See* Magistrate Judge's Report at 22–24, *citing Talley v. Mathews* 550 F.2d 911, 919, n. 21 (4th Cir.1977) (quoting *Voklswagenwerk Aktiengesellschaft v. Federal Maritime Com'n,* 390 U.S. 261, 272, 88 S.Ct. 929, 935, 19 L.Ed.2d 1090 (1968).

■ The task of discerning congressional intent is within the province of the judiciary. *Japan Whaling Ass'n v. American Cetacean Soc'y.,* 478 U.S. 221, 230, 106 S.Ct. 2860, 2866, 92 L.Ed.2d 166 (1986). And, because the legislative history here proved dispositive of the question of congressional intent, the Magistrate Judge's conclusion should be adopted by the Court. Reviewing courts "must not rubberstamp ... administrative decisions that they deem inconsistent with a statutory mandate or that frustrate the congressional policy underlying a statute." *Bureau of Alcohol, Tobacco and Firearms v. Federal Labor Relations Auth.,* 464 U.S. 89, 97, 104 S.Ct.

439, 444, 78 L.Ed.2d 195 (1983) [citation omitted]. A court has the obligation, as the Magistrate Judge correctly pointed out "to honor the clear meaning of a statute, as revealed by its language, purpose, and history." *Southeastern Community College v. Davis,* 442 U.S. 397, 411, 99 S.Ct. 2361, 2369, 60 L.Ed.2d 980 (1979).

■ Defendants' second main objection to the Report and Recommendation is that the Magistrate Judge mischaracterized the Secretary's application of the Energy Assistance Exclusion. The Magistrate Judge found that USDA's denials of Maryland's requests were based, in part, on two criteria not set forth in the agency's regulations: 1) USDA's policy requiring a state to demonstrate increasing energy costs in the year of application, and 2) a limitation on the number of times a state may be granted an exclusion. Magistrate Judge's Report at 42–45. For the Magistrate Judge, resolution of the merits properly turned on whether consideration of these factors was consistent with congressional intent. Magistrate Judge's Report at 4, 24.

After carefully reviewing the legislative history, the Magistrate Judge determined correctly that neither the Food Stamp Act nor its legislative history supported USDA's reliance on these criteria. Magistrate Judge's Report at 42–45.

With respect to the first factor—failure to show an annual rise in assistance recipients' energy cost—the Magistrate Judge examined the legislative history and concluded that Congress designed the energy assistance exclusion as part of a "permanent program" for the "longer range" to address the problem encountered by America's poorer individuals "this winter and beyond."

The Magistrate Judge saw this long-range view on the part of Congress as underlying subsequent amendments to the statute. *See e.g.,* H.R.Rep. No. 788, 96th Cong., 2d Sess. 122 *reprinted in* 1980 U.S.Code Cong. & Admin.News 843, 955 ("[the amendment] was essentially to hold low-income households harmless by permitting them to buy the same amount of ener-

gy they would have utilized in past years without having to diminish their already marginal incomes...."), *quoted in* Magistrate Judge's Report at 39.

Finally, the Magistrate Judge correctly determined that Congress' intent to assist low-income households struggling with the earlier increase in energy expenses persisted as recently as 1988. In 1988, when Congress amended that statute to clarify its intentions, it preserved the energy assistance exclusion. From this it was appropriate for the Magistrate Judge to infer that Congress believed the cost of home energy remained a burden to many poor Americans, notwithstanding that home energy costs generally had leveled off in the mid to late 1980s. Magistrate Judge's Report at 43. Congress could have, but did not eliminate the exclusion. *Id.*

With respect to the second factor—repeat applications by Maryland for exclusions of energy assistance grants from food stamp income—the Magistrate Judge similarly found no indication that Congress intended to impose this requirement. Magistrate Judge's Report at 35–36, 44–45. Nor did USDA give any justification for its consideration of this factor. Accordingly, the Magistrate Judge properly concluded that application of this factor to Maryland's request was contrary to law and an abuse of discretion. Magistrate Judge's Report at 45.

In making this determination, the Magistrate Judge gave emphasis to material and uncontroverted facts. He observed that Maryland had submitted four applications (FYs 1983, 1985, 1986, 1987), which were identical except with regard to energy cost figures for the specific year of application. Magistrate Judge's Report at 24–25. The first two applications were approved. The second two—the subjects of this action—were denied.

The Magistrate Judge inferred appropriately, that the first two applications must have, in USDA's view, suffered from the same infirmities as the second two applications, although USDA approved the first two "almost without comment." Magistrate Judge's Report at 25.

Additionally, the Magistrate Judge observed that USDA had imposed this requirement on other states, similarly without any permissible basis. While Maryland was the only state to seek more than two exclusions (only Maryland and Rhode Island had been approved for an exclusion more than once), USDA had granted the request of Kansas for FY 1985, at least in part, because that was the state's first request. Magistrate Judge's Report at 35, n. 17.

Viewing these observations together, it was appropriate for the Magistrate Judge to conclude that USDA had considered the number of exclusion applications made by Maryland as one ground for denying those requests. Because the Magistrate Judge found no congressional intent to support USDA's use of this second criterion, the Magistrate Judge correctly concluded that consideration of this factor provided an additional basis for the finding that USDA's decisions were contrary to law.

For all the above-mentioned reasons, the Court will enter a separate Order affirming and adopting the Magistrate Judge's Report and Recommendation.

### ORDER

In accordance with the foregoing Memorandum, it is this 9th day of September, 1991, by the United States District Court for the District of Maryland,

ORDERED:

(1) that the Magistrate Judge's Report and Recommendation be, and the same hereby is, *Affirmed and Adopted in toto, with the following exceptions:*

(a) that plaintiff Ruth Massinga be replaced as a party by the present Secretary of the Maryland Department of Human Resources;

(b) that plaintiff Linda Walter be replaced as the class representative by a new and proper class representative;

(c) that defendant Edward R. Madigan be replaced as a party by the present Secretary of the United States Department of Agriculture; and

(d) that the last word on page one (1) of the Report and Recommendation be changed from "A." to "F.";

(2) that state plaintiffs' motions for summary judgment be, and the same hereby are, *Granted;*

(3) that recipient plaintiffs' motions for summary judgment be, and the same hereby are, *Granted;*

(4) that defendants' motions for summary judgment be, and the same hereby are, *Denied;*

(5) that state plaintiffs' motion to revise judgment in light of defendants' explanation on remand be, and the same hereby is, *Dismissed as moot;*

(6) that the Clerk of the Court shall *Close* this case.